# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>WASTE PRO OF FLORIDA, INC,<br><br>Defendant. | Civil Action No. _____<br><br>COMPLAINT<br>AND DEMAND FOR JURY TRIAL<br><br>INJUNCTIVE RELIEF SOUGHT |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful race and national origin-based employment practices and to provide appropriate relief to Charging Party Fednol Pierre ("Pierre"), and a class of other aggrieved Black and/or Haitian-American employees who were adversely impacted by such practices. As alleged with greater specificity below, Defendant Waste Pro of Florida, Inc. ("Waste Pro") violated and continues to violate Title VII of the Civil Rights Act of 1964 by subjecting Black and Haitian-American employees to a hostile work environment based on their race, color, and national origin and by retaliating against employees who complain of the hostile work environment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper because a substantial part of the events giving rise to the Title VII violations occurred in the Middle District of Florida. Further, Waste Pro is headquartered in Longwood, Florida, which is within the jurisdiction of the U.S. District Court for the Middle District of Florida, Jacksonville Division.

## PARTIES

3. Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant Waste Pro is a limited liability company registered to do business in Florida, has continuously done business in Florida, and, at all relevant times, employed at least 15 employees.

5. At all relevant times, Waste Pro has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Mr. Pierre filed a Charge of Discrimination with EEOC alleging that Waste Pro violated Title VII.

7. EEOC issued a Letter of Determination, finding reasonable cause to believe that Waste Pro discriminated against Mr. Pierre and a class of Black and/or Haitian employees based on their race, color, or national origin. EEOC's Letter of Determination further found reasonable cause to believe that Waste Pro retaliated against Mr. Pierre for opposing and complaining about the discriminatory practices in violation of Title VII.

8. Prior to initiating this lawsuit, EEOC attempted to correct the unlawful employment practices alleged herein through informal methods of conciliation, conference, and persuasion, to remedy the discriminatory practices and provide appropriate relief.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

10. Waste Pro of Florida engages in commercial and residential solid waste and recycling collection and disposal services at locations throughout Florida.

11. At its Jacksonville location, Waste Pro employs supervisors, sales staff, and administrative personnel as well as drivers, dispatchers, helpers, technicians, and welders.

12. In its Jacksonville maintenance department, welders, technicians, and helpers perform repairs on and maintain Waste Pro's equipment, including dumpsters, containers, sanitation trucks, and other vehicles.

### Charging Party

13. Charging Party Fednol Pierre is a certified welder and worked for Waste Pro as a welder at its Port St. Lucie location from July 10, 2019 until October 2021 when he transferred to Waste Pro's Jacksonville, Florida location.

14. Shortly after Mr. Pierre transferred to the Jacksonville facility, he began experiencing racial harassment by his co-worker, William Watts, also a welder, who told him that "there is no need for you here" and that he needed to return to his country, and called him a "N*gger" (hereinafter "N*****" or "N-word").

15. Thereafter, Mr. Pierre continued to be frequently subjected to the N-word and other derogatory racial slurs and language, including: "Go back to Haiti N*****"; "Y'all don't belong here"; "go back on the banana boat"; "this is Trump country"; and numerous others.

16. In December 2021, Mr. Pierre reported to Maintenance Manager John Lovelady that Mr. Shuman had called him the N-word, but no corrective or disciplinary action was taken.

17. Mr. Pierre continued to endure comments and slurs regarding his race and Haitian heritage on a nearly daily basis.

18. The comments and slurs were ubiquitous, frequent, and occurred openly, including in the presence of Deandra Pinckney a technician, and other similarly

aggrieved Black and/or Haitian-American coworkers.

19. In March 2022, Fleet Maintenance Supervisor Granville Carter approached Mr. Pierre and told him he overheard Mr. Watts and Mr. Shuman using derogatory racial language to describe him.

20. Mr. Pierre complained to Maintenance Supervisor Carter about the ongoing racial harassment by Mr. Watts and Mr. Shuman.

21. Mr. Carter reported Mr. Pierre's complaint to his supervisor, Maintenance Manager John Lovelady, who notified human resources, and an investigation finally commenced on March 29, 2022.

22. During the investigation, Charging Party again reported the discriminatory conduct to Regional Maintenance Manager Todd Juniper and told him he feared retaliation based upon the investigation.

23. Because Waste Pro did not separate Charging Party from Mr. Watts and Mr. Shuman, he requested a transfer to a later shift, even though he would suffer a loss of hours and pay as a result. However, even with the later start time, Charging Party still had to work with Mr. Watts and Mr. Shuman for an hour each day.

24. Charging Party requested Regional HRM Risner to permit him to remain anonymous and to not disclose he was the person who had reported the open and ongoing use of racial slurs at the facility.

25. Regional HRM Risner agreed not to disclose his identity; however, the following day, without notifying Charging Party, she disclosed to Mr. Watts that Charging Party had made a race discrimination complaint against him and Mr.

5

Shuman, even though it was Maintenance Manager John Lovelady, who formally notified human resources.

26. Following Waste Pro's investigation, Regional HRM Risner notified Charging Party, among other things, that she planned to hold a maintenance staff meeting later that day to discuss race discrimination with maintenance employees.

27. Before the staff meeting, Charging Party and another Black employee discovered a stuffed monkey carrying an American flag in Mr. Pierre's work area:



28. Mr. Pierre immediately reported the monkey incident to management and demanded the stuffed monkey be removed and that management review video footage and conduct an investigation into the matter; *however, no corrective action was taken before the staff meeting*.

29. Following his complaints, Mr. Watts and Mr. Shuman began retaliating against Mr. Pierre. Specifically, Mr. Watts and Mr. Shuman refused to communicate with Mr. Pierre about auto-repairs, and they often left him with the least desirable,

6

most difficult welding tasks to complete at night.

30. Mr. Watts and Mr. Shuman also locked the best welding equipment in their personal lockers so that Charging Party could not access it.

31. After approximately two more weeks had passed, due to the ongoing harassment, and because no investigation or corrective measures stemming from the monkey incident were forthcoming, Charging Party resigned.

32. On the evening of his resignation, May 12, 2022, Charging Party told Maintenance Manager Carter that he was quitting because he could no longer work with the men who continued to harass and mistreat him and because no action had been taken in response to the monkey incident.

33. Thereafter, on May 13, 2022, Regional Maintenance Manager Juniper instructed Maintenance Manager Outten to incorrectly note in Mr. Pierre's termination paperwork that he was not rehireable because he had *twice* walked off the job.

34. Because of Waste Pro's unlawful conduct, Mr. Pierre was harmed and suffered damages.

<u>Class of Black and Haitian-American Employees</u>

35. From at least February 2021 to present, Waste Pro subjected a class of Black and/or Haitian-American employees at its Jacksonville location to a hostile work environment based on their race, color, or national origin.

36. Waste Pro managers and employees alike subjected Black and Haitian-American employees in Jacksonville to hostile treatment, including racial slurs and

7

derogatory comments, such as the N-word.

37. Managers were aware of and condoned the ongoing racial harassment of Black and Haitian-American employees, which was committed openly and, at times, in their presence.

38. For example, as set forth in paragraphs 27 and 28 above, on March 29, 2022, the day of the race discrimination meeting, a stuffed monkey holding an American flag was displayed openly in Mr. Pierre's work area, in a location which everyone, including other Black and Haitian-American employees who entered the facility on that day, could see.

39. Managers left the stuffed monkey for everyone to see for several hours after receiving a complaint, until after the conclusion of the race discrimination meeting.

40. Even though managers received several complaints of race discrimination, it consistently failed to properly investigate them and take adequate remedial and corrective measures.

41. In addition to subjecting employees to racially and ethnically inflammatory language, managers perpetuated a hostile work environment by purposefully assigning Black and Haitian-American maintenance employees to do more difficult repair work and provided them with inferior equipment and tools.

42. Likewise, supervisors of drivers also mistreated their subordinates and made racial comments in the workplace about their skin color; for example, one supervisor commented, "It's awful dark around here," referring to the presence of his

Black subordinates.

43. Managers also delegated and assigned Black drivers to complete less desirable routes and provided them with inferior vehicles.

44. White employees were often given leniency in the enforcement of company policies and were generally treated more favorably than their Black counterparts.

45. For example, Waste Pro's Jacksonville Division Manager, Tim Williams, who was the top official in charge of the Jacksonville Division, was openly racist and sexist and required Office Manager Melissa Pauley to discriminate on his behalf against Black applicants for positions in the Jacksonville Division.

46. When Office Manager Pauley proposed hiring a Black female for a dispatcher position, Division Manager Williams asked whether she was White or Black and objected to her hire.

47. Division Manager Williams also openly mistreated other Black employees, including a Black male supervisor named George Cearcy, on whose facial features Mr. Williams commented, stating that Mr. Cearcy had "Billy Idol lips."

48. Because of Waste Pro's unlawful conduct, a class of Black and Haitian-American employees were harmed and suffered damages.

## STATEMENT OF CLAIMS

### Count I: Hostile Work Environment (Fednol Pierre)

49. As set forth in paragraphs 10 through 34, which are fully incorporated

9

herein, Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Mr. Pierre to a hostile work environment on the basis of his race and color, Black, and national origin, Haitian American.

50. The effect of the practices complained of in paragraphs 10 through 34 have been to affect the terms and conditions of Mr. Pierre's employment, to deprive him of equal employment opportunities, and to otherwise adversely affect his status as an employee because of his race, color and national origin.

51. The unlawful employment practices complained of in paragraphs 10 through 34 were done intentionally with malice or with reckless indifference to the federally protected rights of Mr. Pierre, based on his race, color and national origin.

52. Mr. Pierre suffered damages as a result of the conduct described herein.

### Count II: Hostile Work Environment (Class Members)

53. As set forth in paragraphs 34 through 48, which are fully incorporated herein, Waste Pro engaged in unlawful employment practices in violation of 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by subjecting a class of employees at Waste Pro's Jacksonville location to a hostile work environment based on color, race, Black and/or national origin, Haitian American.

54. The effect of the practices complained of in paragraphs 34 to 48 has been to deprive the aggrieved class members of equal employment opportunities because of their race, color and/or national origin.

55. The unlawful employment practices complained of in paragraphs 34 to

48 were done intentionally and with malice and/or with reckless indifference to the federally protected rights of the class of aggrieved employees, based on their race, color and/or national origin.

56. The aggrieved class members suffered damages as a result of the conduct described herein.

### Count III: Retaliation (Fednol Pierre)

57. As set forth in paragraphs 16 through 34, which are fully incorporated herein, Waste Pro retaliated against Mr. Pierre as a result of his complaints and opposition to race, color and national origin-based harassment by disclosing his identity as the complainant to his harassers and refusing to investigate or take corrective measures, by subjecting him to a retaliatory hostile work environment, and by designating him as non-rehireable due to purported employee misconduct, in violation of Section 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a)(1).

58. The effect of the practices complained of in paragraphs 16 through 34 have been to affect the terms and conditions of employment for Mr. Pierre, to deprive him of equal employment opportunities, and to otherwise adversely affect his status as an employee because he engaged in protected activity.

59. The unlawful employment practices complained of in paragraphs 16 through 34 were done intentionally and with malice and/or with reckless indifference to the federally protected rights of Mr. Pierre.

60. Mr. Pierre suffered damages as a result of the conduct described herein.

### PRAYER FOR RELIEF

WHEREFORE, EEOC respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Waste Pro, its officers, agents, servants, managers, employees, and all persons in active concert or participation with it, from participating in discriminatory conduct based on color, race, and national origin, including, but not limited to, permitting a hostile work environment and/or retaliating against employees who engage in statutorily protected activity in the workplace;

B.     Order Waste Pro to institute and carry out policies, practices, and programs which provide equal employment opportunities for prospective Black and Haitian-American employees and which eradicate the effects of its past and present unlawful employment practices;

C.     Order Waste Pro to make Mr. Pierre, and the class of aggrieved Black and/or Haitian-American employees, whole, by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

D.     Order Waste Pro to pay Mr. Pierre and the class of aggrieved Black and/or Haitian-American employees punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

E.     Grant such further relief as the Court deems necessary and proper in the public interest; and

F.     Award EEOC its costs of this action.

## **JURY TRIAL DEMAND**

EEOC requests a jury trial on all questions of fact raised by its Complaint.

| | |
|---|---|
| Date: September 26, 2023 | Respectfully submitted, |

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
Acting General Counsel
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507

ROBERT E. WEISBERG
Regional Attorney
Florida Bar No. 285676

KRISTEN M. FOSLID
Assistant Regional Attorney
Florida Bar No. 0688681

/s/Austin N. Case
AUSTIN N. CASE
Lead Counsel
Connecticut Bar No. 439030

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Miami District Office
100 S.E. 2nd Street
Suite 1500
Miami, Florida 33131
Phone: (786) 648-5846
Fax: (305) 808-1835
austin.case@eeoc.gov