UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,                    CASE NO: 3:23-cv-01132-BJD-MCR

v.

WASTE PRO OF FLORIDA, INC.,

        Defendant.

_____/

## DEFENDANT'S EXPERT DISCLOSURE

Defendant, WASTE PRO OF FLORIDA, INC. ("Waste Pro"), by counsel and pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Section II(E) of the Middle District of Florida Discovery Handbook, and this Court's Endorsed Order Granting Defendant's Second Motion for Extension of Defendant's Expert Disclosure Deadline (Doc. 42)**.** hereby discloses that it intends to use the testimony of Ginger McRae, Senior Consultant, Employment Practices Solutions, at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. Ms. McRae will be compensated $500 per hour for the study and $550 per hour for the testimony in this case. Ms. McRae's Expert Report accompanies this Disclosure as Exhibit 1.

                    STOVASH, CASE & TINGLEY, P.A.

                    */s/ Amy S. Shay*
                    Amy S. Shay, Esquire
                    Florida Bar Number 0068871
                    ashay@scsplaw.com
                    Matthew J. Pearce, Esquire

Florida Bar Number 0108368
mpearce@scsplaw.com
220 North Rosalind Avenue
Orlando, Florida 32801
Telephone: 407-316-0393
Facsimile: 407-316-8969
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I caused a true and correct copy of the

foregoing to be served by email to counsel of record for Plaintiff, Austin N. Case,

Esquire, Gwendolyn Y. Reams, Esquire, Robert E. Weisberg, Esquire, and Kristen

M. Foslid, Esquire.

*/s/ Amy S. Shay*
Amy S. Shay

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

    vs.

WASTE PRO OF FLORIDA, INC.

        Defendant.

CASE NO: 3:23-cv-01132-BJD-MCR

EXPERT REPORT

[Preliminary Report Subject to Additional Discovery]

On behalf of Defendant Waste Pro of Florida, Inc.

Submitted by Ginger S. McRae, Esq., SPHR, SHRM-SCP
Senior Consultant
Employment Practices Solutions, Inc.

539 W. Commerce St. #780
Dallas, TX 75208
(817) 329-8460
www.epspros.com

August 23, 2024

# EXHIBIT 1

**I.  SUBJECT OF EXPERT OPINION**

Defendant Waste Pro of Florida, Inc. ("Defendant" or "Waste Pro"), through its attorneys, retained me to review relevant information and provide an opinion as to whether the policies and practices of Waste Pro with respect to preventing racial discrimination and harassment in the workplace and responding to racial discrimination and harassment of which it is reasonably aware at Waste Pro's Jacksonville, Florida locations are consistent with generally accepted human resource standards.  I was also retained to provide an opinion whether the application of those policies and practices in the circumstances of this case was consistent with generally accepted human resource standards, as defined below.

This Report is based on information available at the time it was filed.  In the event additional information becomes available that is relevant to the opinions in this Report, the ability to supplement is reserved.

No portion of my compensation for my services as an expert in this matter is conditioned upon my rendering any particular opinion.

**II.  SUMMARY OF EXPERT OPINION**

In my opinion and based on my experience, the policies and practices of Waste Pro with respect to preventing racial discrimination and harassment in the workplace and responding to racial discrimination and harassment of which it is reasonably aware at its Jacksonville locations are consistent with generally accepted human resource standards. Additionally, in my expert opinion, the application of those policies and practices in the circumstances of this case was consistent with generally accepted human resource standards.  The basis of this opinion is described in Section V.

**III. QUALIFICATIONS**

I have worked in the labor and employment area for more than 40 years.  I received my license to practice law from the State of Georgia in 1982 after graduating, with honors, from the University of Georgia School of Law.  From 1982 to 1983, I served as a judicial clerk to Hon. Robert H. Hall, United States District Court for the Northern District of Georgia.  I assisted Judge Hall with numerous employment cases in that capacity.  From 1983 through 1989, I was an associate at Paul Hastings, practicing exclusively in the labor and employment area.  As an employment attorney, I counseled clients on how to manage their workforces in compliance with the applicable equal opportunity, wage and hour, and labor laws.  During that time, I was involved in numerous employment cases before federal and state courts and administrative agencies.  I also counseled employers throughout the United States on preventing violations of and complying with employment laws and regulations and conducted training on employment matters.

From 1989 to 1997, I served as Assistant General Counsel for Turner Broadcasting System, Inc., a news, sports, and entertainment company, and from 1997 to 2000, I was Managing Attorney for Southern Company, the parent company of several regional electric utilities and other businesses. In these roles, I provided advice to management and human resources on employment matters, including hiring, management of employees, policies and procedures, performance management, and investigation of workplace matters.

Since January 2001, I have been a human resources consultant. As a consultant, I provide consulting services on employment policies and practices, and conduct investigations of allegations of workplace misconduct, one-on-one counseling, and training classes in areas such as unlawful harassment, diversity, policies and procedures, performance management, and other employment topics for employees, management, human resources departments, and executives. I am a speaker and author on employment matters. I have served as an expert witness on employment policies and practices in multiple cases.

My curriculum vitae is attached to this report as Exhibit A.

**IV. DOCUMENTS AND MATERIALS REVIEWED**

Complaint in EEOC v. Waste Pro of Florida, Inc.
Answer of Waste Pro
Waste Pro employee Policy acknowledgments
Training record for managers and supervisors at Jacksonville locations
Position statement of Waste Pro regarding EEOC Charge of Pierre and exhibits thereto
EEOC Letter of Determination regarding Pierre EEOC Charge
Written summary of investigation by Risner of Pierre's complaint
Summary by Melissa Pauley dated May 27, 2022
Chart of information about class members provided by the EEOC to Waste Pro
Waste Pro's Employee Handbook dated June 2017
Waste Pro's Anti-Discrimination, Anti-Retaliation, and Racial Discrimination Policy dated
        May 2024
Information about training related to the Policy at Waste Pro
Information related to corrective action, including termination, for misconduct at the
        Jacksonville locations of Waste Pro
Photograph of facilities at Strickland location of Waste Pro in Jacksonville, including an
        overhead view and the welding shop

**V. EXPERT OPINION**

This expert report addresses whether the policies and practices of Waste Pro with respect to preventing racial discrimination and harassment in the workplace and responding to racial discrimination and harassment of which it is reasonably aware at its Jacksonville locations are consistent with generally accepted human resource standards. Additionally, this expert report addresses whether the application of those policies and practices in the circumstances of this case was consistent with generally accepted human resource standards. "Generally accepted human resource practices" are those which are nondiscriminatory, based on legitimate business goals and objectives, and which conform to generally accepted standards utilized by human resource professionals. These practices are derived from judicial decisions, regulations and other guidance issued by government agencies, and scholarly research and publications related to human resource practices.

In my expert opinion, and based on my experience, Waste Pro acted consistently with generally accepted human resource practices in that it adopted and implemented reasonable policies and practices to prevent racial discrimination and harassment and responded appropriately to misconduct that violated its policies of which it was reasonably aware at its Jacksonville locations. Further, in my expert opinion, the application of those policies and practices in the circumstances of this was reasonable in relation to generally accepted human resource standards.

**A. Steps by Waste Pro to Establish and Communicate Commitment to a Workplace Free of Discrimination and Harassment Met Generally Accepted Standards**

Waste Pro is a privately-owned waste management company that provides collection, recycling, processing, and disposal services for residential, commercial, industrial, and municipal customers. Waste Pro has two locations in Jacksonville separated by approximately 18 miles. The larger Strickland location has three physical structures. The first building is the administration building where the customer service, dispatch, and accounting departments are located. Outside of the building is a parking lot and across the way is the welding shop, the second building. It has two bays through which trucks can drive and be parked while the welders work on them. The third building at the Strickland location is the maintenance shop where technicians work on the trucks. This third building has a second story where more office personnel are located.

The smaller Greenland location in Jacksonville has a single physical structure with separate areas. There is the administrative area where the customer service and dispatch departments are located. The maintenance shop where technicians work on truck repairs is at the back of the building. There is also a container shop on the back side of the building where some welding work occurs.

Welders and technicians in Waste Pro's Jacksonville locations perform repairs on and maintain Waste Pro's equipment, including dumpsters, containers, sanitation trucks, and other vehicles. Drivers drive the sanitation trucks and helpers ride on the back on the trucks to assist in the collection of solid waste.

It is well accepted in human resources practice that employers have an obligation to make efforts to prevent discrimination and harassment from occurring and when it does occur, to respond promptly and appropriately. Generally accepted employer practices to meet this obligation are:

- A clear policy against discrimination and harassment.
- Dissemination of the anti-discrimination and anti-harassment policy.
- A complaint procedure.
- Prompt response to/investigation of complaints.
- Corrective action in cases of policy violations.

In my expert opinion, as discussed below, Waste Pro's policies and practices were fully consistent with these generally accepted standards. Further, its application of its policies and practices in the circumstances of this case was fully consistent with generally accepted human resource standards.

1. <u>Waste Pro has a clear policy against discrimination and harassment that meets generally accepted standards</u>

According to the EEOC Enforcement Guidance on Harassment dated April 29, 2024 (hereafter "EEOC Guidance"),[1] promulgated by the Plaintiff in this case, an anti-harassment policy and complaint procedure should contain the following elements:

- A clear explanation of prohibited conduct;
- Assurance that employees who make complaints of discrimination or harassment or provide information related to such complaints will be protected against retaliation;
- A clearly described complaint process that provides multiple, accessible avenues of complaint;
- Assurance that the employer will protect the confidentiality of complaints to the extent possible;

---

[1] https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace. According to the EEOC's website, the EEOC Guidance supersedes *Compliance Manual Section 615: Harassment* (1987); *Policy Guidance on Current Issues of Sexual Harassment* (1990); *Policy Guidance on Employer Liability under Title VII for Sexual Favoritism* (1990); *Enforcement Guidance on* Harris v. Forklift Sys., Inc. (1994); and *Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors* (1999). Waste Pro's actions in this case were consistent with the EEOC Guidance in effect at the relevant times.
*EEOC v. Waste Pro of Florida, Inc.*
Expert Report of Ginger S. McRae, Esq., SPHR, SHRM-SCP
August 23, 2024                                                                                           Page 5

- A complaint process that provides a prompt, thorough, and impartial investigation;
- Assurance that the employer will take immediate and appropriate corrective action when it determines that discrimination or harassment has occurred; and
- A requirement that supervisory employees report discrimination or harassment when they become aware of it.

Waste Pro's Equal Employment Opportunity Policy and Harassment and Complaint Procedures Policy dated June 2017 ("2017 Policy") and in effect until updated in May 2024 by the Anti-Discrimination, Anti-Retaliation, and Racial Discrimination Policy ("2024 Policy) (together "the Policy") are part of Waste Pro's Employee Handbook. The Policy prohibits unlawful discrimination, including harassment, against any individual n on the basis of race and color, as well as other characteristics protected by law.  The Policy clearly describes prohibited discrimination and harassment, providing examples of conduct that may constitute violations of the Policy.

The 2017 Policy states as follows:

> **Examples** of behavior which could be construed as harassment include, but are not limited to, the following:
> - degrading any group or class of people;
> - assigning less desirable work or working conditions to members of such protected groups based solely on their group membership; or,
> - treating protected individuals in a demeaning fashion.
> - signs, text messages, emails, electronic communications of any kind, magazines, or bulletin board notices that are found offensive by a protected minority.

The Policy contains a complaint procedure, directing employees who feel they have subjected to discriminatory or harassing conduct of any type to immediately report the conduct to their Regional Human Resources ("HR") Manager, Regional Vice President, or Director of HR. (2017 Policy) The Policy provides for investigation of complaints and an assurance of confidentiality of complaints to the extent possible.  It further states that appropriate disciplinary action will be taken if it is determined that the Policy has been violated and that retaliation for making a complaint is prohibited.

Applying generally accepted human resource standards, Waste Pro clearly had at the time of the events in this case an anti-discrimination and anti-harassment policy in place that met generally accepted human resource standards, including the standards of the EEOC Guidance. Waste Pro has updated its Policy in the past year, further meeting generally accepted human resource standards.

2.  <u>Waste Pro took reasonable measures to disseminate the Policy</u>

a. <u>Distribution of the Policy at time of hire</u>

As a part of being employed by Waste Pro in July 2019, Fednol Pierre ("Pierre"), as all new employees, was provided the Employee Handbook, containing the Policy.  Pierre acknowledged receipt of the Employee Handbook.  He also received and signed a separate summary of the Equal Employment Opportunity Policy with information on how to raise questions or concerns.

Similarly, the members of the class described by EEOC in its complaint in this case and identified by name by EEOC were provided the Policy when hired.

b. <u>New hire training</u>

As a further means of distributing its Policy, new hires are trained on the Policy on their first day as part of orientation.  When Pierre was hired in 2019, Pierre attended a presentation to new hires covering key information.  The presentation covered the Policy, what it means, and how it is implemented through reporting and investigation of complaints.  The presentation identified Human Resources as a resource for employees to get help on policies and other issues.

William Watts ("Watts"), accused of harassment by Pierre, attended orientation when he was hired in March 2021, including information on the Policy.  Stacy Shuman ("Shuman"), also accused by Pierre, attended orientation when he was hired in 2019, including information on the Policy.

Beginning January 1, 2021, all new hires view a video which covers the Policy and the key components, including how to complain (to a supervisor or HR), the investigation process, the prohibition on retaliation, and the requirements for managers and supervisors to report complaints and conduct that come to their attention to HR.  After watching the video, a facilitator asks new hires, "Any questions about what you should do in the event you feel you have been discriminated or retaliated against?  Any other questions regarding our policies on discrimination or harassment, equal employment, complaints, or the ADA?" The facilitator reminds the new hires, "Don't forget, more information on the policies we have covered so far can be found in the Employee Handbook."

These methods of disseminating and communicating the Policy to new hires are fully consistent with generally accepted human resource standards.  The training explains the Policy and its key elements, it is easy to understand, and it is provided to all new hires.

c. <u>Supervisor and manager training</u>

From 2000 to September 2022, Waste Pro provided training to supervisors and managers in a presentation called "Workplace Harassment for Supervisors and Manager – Multi-State Edition."  This two-hour interactive Learning Management System ("LMS") course communicated Waste Pro's commitment to providing a positive work environment that recognizes and respects the dignity of all employees.  Supervisors and managers were trained that harassment of any form undermines this important commitment and is not appropriate or acceptable. The course trained supervisors and managers how to prevent and effectively respond to incidents of workplace harassment.

In 2022, Waste Pro revamped and reinvigorated its training for supervisors and managers. In September 2022, Waste Pro began to assign to new supervisors and managers training on seven topics, including anti-harassment and overall human resources compliance.  This training includes information on workplace bullying, handling complaints, handling conflict, identifying and combatting racial discrimination and harassment, and preventing other workplace harassment.  Courses include a two-hour session entitled "Common Ground: Sexual Harassment and Abusive Conduct Prevention."  Topics covered include prevention of harassment and abusive conduct, response, reporting, investigation, and resolution.

Apart from training at the time of hire or promotion to supervisor or manager, existing managers are assigned a course entitled "Preventing Harassment and Discrimination: US Managers Edition."  This is a 65-minute course designed for managers covering what harassment and discrimination are, the personal dynamics that can lead to misconduct, what bystanders can and should do, and special duties as leaders.

In addition to the training described above, at its Jacksonville locations, Waste Pro conducted in-person training for supervisors and managers twice in less than a year.  In the first session, on August 24, 2023, Shannon Early ("Early"), Vice President HR, Brian Wintjien ("Wintjien"), Regional Vice President, and Amy Shay ("Shay"), outside counsel, met with supervisors and managers after they viewed a one-hour video on handling harassment complaints. In the in-person session on August 24, 2023, Early, Wintjien, and Shay reviewed topics that included ensuring the work environment is free of any unprofessional words or acts, maintaining a positive work environment, and handling and investigating complaints of unfair or inappropriate words or conduct.

On February 8 and 9, 2024, Kelly Sell led in-person training on Workplace Harassment and Discrimination Prevention for supervisors and managers at the Jacksonville locations.

In my expert opinion, Waste Pro's communication of and education on its Policy is fully consistent with generally accepted human resource standards. New hires are provided the Policy and trained on it. New supervisors and managers, whether newly hired or promoted, are trained on their obligations under the Policy. Current managers are trained periodically to emphasize the Policy and their responsibilities under it. Supervisors and managers at Waste Pro's Jacksonville locations were trained in-person in August 2023 and again in February 2024.

### B. The investigation by Waste Pro of Pierre's complaint was consistent with generally accepted standards

Pierre, a welder, requested and was granted a transfer from Waste Pro's Port St. Lucie, Florida location to the Jacksonville Strickland location of Waste Pro in October 2021. According to Waste Pro's records, Pierre first reported complaints about his Jacksonville co-workers in March 2022. Regional Maintenance Manager Todd Juniper ("Juniper") informed HR Manager Rita Risner ("Risner") that Pierre made a request to his supervisor Granville Carter ("Carter") to change Pierre's hours to start work at 3:30 pm instead of 1:30 pm. When Carter asked Pierre why he wanted to change his schedule, Pierre said he was tired of the racial comments by his co-workers. Carter reported Pierre's concerns to Juniper, who reported them to Risner. Carter reported to Juniper that Pierre had not previously reported concerns. Carter also reported to Juniper that Carter had not witnessed any racial comments.

Juniper spoke directly with Pierre the next day and Pierre told Juniper that two welders, William Watts ("Watts") and Stacy Shuman ("Shuman"), made comments to Pierre such as "you should go back to Haiti where you are from." When Juniper told Pierre that he would report this information to HR, which would do an investigation, Pierre said he did not want an investigation because he did not want to be "known as a narc." Juniper told Pierre that HR was obligated to investigate Pierre's concerns.

Risner conducted the investigation of Pierre's complaint. She spoke to Pierre and explained the process and the need for the investigation. According to Risner's report of her investigation dated May 2, 2022, she interviewed Pierre the week following Pierre's complaint. Risner's report stated that Pierre reported to her that Watts reportedly said about Pierre before Pierre transferred to the Jacksonville division, "Why are we bringing this guy over, we don't need any additional help here, we don't even know him." Pierre said when interviewed that Watts told Pierre to go back to where he came from. According to Risner's report, Pierre said that Watts and Shuman made racial comments and that Watts referred to himself as a "cracker."

According to Risner's report, she asked Pierre to identify witnesses to these comments and Pierre named Walky Richmond ("Richmond"), another mechanic. Risner told Pierre that she would speak with Richmond, Watts, Shuman, and other witnesses that might be identified and that she would get back to him when she completed the investigation.

Risner's report reflects that she interviewed Watts, who said he and Shuman joked around with Pierre, including using racial slurs, which Pierre used as well. Watts told Risner that he referred to himself as a "cracker" and Pierre referred to himself as a "nigger." Watts said Pierre would then refer to Watts as a "cracker" and Watts would refer to Pierre as a "nigger." Watts denied that he told Pierre to go back where Pierre came from.

Risner noted in her report that she told Watts immediately, in the course of the interview, that all racial comments in the workplace must stop immediately. According to Risner's report, Watts said he understood and agreed. Risner also admonished Watts that Pierre was not to be retaliated against and that if retaliation occurred, there would be discipline as a result. Watts was also told by Risner not to discuss the investigation with anyone else.

According to Risner's report, she interviewed Shuman, who said that Watts and Pierre bicker at each other, curse, and throw out racial comments. Shuman denied that he used any racial terms toward Pierre. As with Watts, Risner told Shuman that Pierre was not to be retaliated against and that if retaliation occurred, there would be discipline as a result. Risner also told Shuman not to discuss the investigation with anyone else.

Risner also interviewed Richmond, who is Black and worked with Pierre, Watts, and Shuman. Richmond said he had not heard any racial slurs or comments by anyone in the shop. Richmond said that Pierre, Watts, and Shuman "joke around." Risner advised Richmond that retaliation is prohibited and not to discuss the investigation with anyone else.

Risner's report found there was banter back and forth between Watts and Pierre, with Pierre initially using the term "nigger" to refer to himself, followed by Watts using the term. No other comments alleged were substantiated by the investigation. Further, Risner admonished Watts during his interview to immediately cease use of the terms "cracker" and "nigger" in the workplace regardless of the context or situation.

According to Risner's report, she met with Pierre on April 28, 2022 to inform him that she had concluded the investigation and reviewed her findings. Risner also told Pierre that she would be meeting with all welding shop employees that day to reiterate the Policy. Risner reminded Pierre to report any conduct that he viewed as retaliatory to her. There is no information that Pierre reported any conduct that he believed was retaliatory to Risner or anyone else. Pierre resigned on May 12, 2022, only two weeks later. Watts was terminated by Waste Pro for attendance reasons less than a week later, on May 4, 2022.

On April 28, 2022, Risner met with on-duty welders and technicians at the Strickland location where Pierre worked to review the Policy.  Pierre, Shuman, Watts, and eight other employees attended this training.

After Risner's meeting with employees, Juniper told Risner that a stuffed gorilla holding an American flag was found on top of the computer monitor used by welding shop employees.  Juniper told Risner that only the stuffed animal was found and that no one saw who put it there.  Juniper disposed of the stuffed animal.  He informed Risner that there was no video surveillance in the area to identify who left the item. Juniper also asked Watts if he was involved with placing the stuffed animal on the monitor and Watts denied any involvement.  Risner told Juniper to continue to monitor the area.

According to the EEOC Guidance, "once an employer has notice of potentially harassing conduct, it is responsible for taking reasonable corrective action to prevent the conduct from continuing. This includes conducting a prompt and adequate investigation and taking appropriate action based on the findings of that investigation."  Further, EEOC Guidance states that "an investigation is adequate if it is sufficiently thorough to 'arrive at a reasonably fair estimate of truth.'"  It need not be a "trial-type investigation."

In my expert opinion, the investigation of Pierre's complaint was fully consistent with generally accepted human resource standards. Waste Pro investigated Pierre's complaint promptly and thoroughly. It was completed in a timely fashion. Risner interviewed the key parties, the complainant Pierre, the accused Watts and Shuman, and the one witness identified by Pierre.  Considering the information gathered, the findings were appropriate. Risner made clear to Watts the expectations for conduct in the workplace. Further, Risner clarified on April 28, 2022 to welders and technicians at the Strickland location the expectations for conduct in the workplace under the Policy.

There is no information regarding who was responsible for placing the stuffed animal on the monitor on April 28, 2022.  There were no leads to pursue regarding this incident nor was the motivation known for placing the stuffed animal.  The item was removed as soon as it was brought to Juniper's attention.  Risner appropriately documented her investigation and findings, the training, and the stuffed animal incident in a written summary dated May 2, 2022.

### C. Corrective action taken by Waste Pro after the investigation of Pierre's complaint was consistent with generally accepted human resource standards

In addition to the training on the Policy conducted for the maintenance team on April 28 2022 by Risner, Waste Pro implemented training throughout its Jacksonville locations in 2022-2024.  As discussed in detail in Section A.2 above, Waste Pro continued to provide the Policy and training on it to new hires during their orientation.  In September 2022, Waste Pro began to assign to new supervisors and managers training on multiple topics, including anti-harassment and overall human resources compliance, including a two-

hour session entitled "Common Ground: Sexual Harassment and Abusive Conduct Prevention." Topics covered in this session include prevention of harassment and abusive conduct, response, reporting, investigation, and resolution.

In addition to training at the time of hire or promotion to supervisor or manager, existing managers are assigned a course entitled "Preventing Harassment and Discrimination: US Managers Edition," which covers what harassment and discrimination is, the personal dynamics that can lead to misconduct, what bystanders can and should do, and special duties as leaders. Further, to ensure communication of the Policy in the Jacksonville, Florida locations, Waste Pro held in-person training for supervisors and managers on Workplace Harassment and Discrimination Prevention in August 2023 and again in February 2024.

Additionally, Waste Pro updated and expanded the Policy in May 2024, including more explanation of supervisor and manager responsibilities under the Policy, an expansion of those to whom complaints can be made, and other features. The 2024 Policy requires that all supervisors and managers take the Common Ground training within their first 30 days of employment and to annually complete Preventing Discrimination and Harassment training and affirm compliance.

In my expert opinion, these actions to educate employees at all levels on the Policy and their rights and obligations under it are fully consistent with preventing and correcting conduct that violates the Policy and with generally accepted human resource standards.

### D. The Class identified in EEOC's Complaint in this Case

In its complaint in this case, the EEOC alleges discrimination and harassment by Waste Pro employees toward a class of 25 current and former employees, including Pierre, in several different jobs, managed by different managers, at both Jacksonville locations. In the information on individual class members provided by the EEOC in the discovery process, many of the individuals never complained to any of the multiple persons designated by the Policy to receive complaints. When complaints are alleged by the EEOC, no dates of when the alleged conduct occurred or the complaint made are provided. Some of the complaints are general, related, for example, to truck assignments to drivers and other work assignments, and no information provided whether race discrimination was alleged. Work assignment issues are mixed in with environmental harassment issues. Claims of harassment in "public work areas" lack context of whether a supervisor was in the area and if so, if comments could be heard in noisy areas such as a welding shop or truck bays. Such claims lack the context of the physical layout of the Jacksonville locations discussed above, where workers work in separate buildings or separate floors of buildings, where supervisors are not always present, and which are often noisy.

The vast majority of the class individuals were or are drivers or helpers, employees who work on trucks and are in a different building than the welding shop where Pierre worked and were or are managed by different individuals, many of whom are no longer employed.

In my opinion, the process set out in the Enforcement Guidance promulgated by EEOC itself should apply to each one of these employees and ex-employees individually. General grievances about work and equipment assignments do not create an obligation under the Policy. Complaints about co-worker conduct cannot trigger an employer response unless the employer was aware of the conduct.

To the extent that complaints were brought to Waste Pro's attention during the period relevant to this case, multiple investigations were conducted and corrective action taken as follows:

- Division Manager Tim Williams was terminated in January 2024 after an investigation showed that he made racially inappropriate comments.
- Route Supervisor Nathan Preston was terminated in August 2023 after an investigation showed inappropriate treatment of employees by Preston.
- Driver Derrick Turner, a claimant in this case, was terminated in February 2024 when a video on social media showed that he made a racially insensitive comment to the Helper in his truck.
- Operations Manager Demetrius Burgess was disciplined in Spring 2024 for unprofessional conduct.
- Regional Maintenance Manager Todd Juniper was denied rehire in Summer 2023 due to inappropriate comments to employees that were discovered after Juniper's resignation.
- Operations Manager Terry Grady was reassigned to a non-managerial role in January 2024 after complaints about his conduct toward female employees.
- Driver Makita Perry, a claimant in this case, was terminated on May 29, 2024 after an investigation showed she yelled racial slurs at the Operations Manager.
- Driver/Helper Mike King was terminated in January 2024 after making a false complaint about Driver Tasheba Brown, a claimant in this case, while her complaint that King spoke aggressively to her was being investigated.
- Driver Frank Dixon was terminated in February 2024 after an investigation of a complaint about his inappropriate behavior toward co-workers revealed a social media video showing him making racially inappropriate comments.
- Route Supervisor Eric Black was terminated in November 2022 after an internal investigation of a complaint showed inappropriate conduct toward female employees.
- Helper James Jones was terminated on October 20, 2022 after an investigation of his alleged use of racial slurs towards a resident.

- Helper Ronald Glover was terminated on November 30, 2022 after a female driver complained of inappropriate behavior toward her.
- Helper Darrien Sutton was terminated on June 7, 2023 after an investigation of his altercation including racial slurs toward a Public Works employee.
- Driver Duron Johnson was terminated on June 7, 2023 for driving Sutton to and from Public Works, knowing about the altercation including racial slurs, and taking no action to stop Sutton.
- Driver Tatiana Garvin was terminated on July 25, 2023 after an investigation of a complaint by a resident that Garvin used racial slurs toward the resident.
- Driver Marvin Long was terminated on May 6, 2024 after an investigation that showed he used a racial slur toward another employee.

In my expert opinion, the investigations and corrective action described above illustrate that Waste Pro applied its Policy consistently with generally accepted human resource standards when complaints were brought to Waste Pro's attention at its Jacksonville locations.

### E.  Conclusion

Summarizing this Section V, in my expert opinion and based on my experience, Waste Pro acted in accordance with generally accepted human resource practices in that:

- ➢ Waste Pro's Policy prohibiting illegal discrimination and harassment in the workplace had the generally accepted components.

- ➢ Waste Pro effectively distributed its Policy prohibiting illegal discrimination and harassment in the workplace at the outset of employment to new hires and provided information at that time about the Policy.

- ➢ Waste Pro trained new supervisors and managers on the Policy and provided periodic training to current supervisors and managers through a variety of training courses during the period relevant to this case.

- ➢ Waste Pro conducted and properly documented a thorough investigation of concerns raised by Pierre in March 2022 and took appropriate corrective action, including re-setting expectations of workplace conduct with accused employee Watts individually and conducting a meeting on the Policy with welders and technicians at the Strickland location.

- ➢ In addition to other training, Waste Pro twice conducted in-person training of supervisors and managers at the Jacksonville locations after the March 2022 events, in August 2023 and February 2024.

➢ Waste Pro updated and expanded its Policy in May 2024.

➢ Information related to complaints made to Waste Pro about employees other than those accused by Pierre shows that multiple investigations were conducted and corrective action was taken, including termination.

Respectfully submitted,

*Ginger S. McRae*

_____

Ginger S. McRae
August 23, 2024

**EXHIBIT A**



**CURRICULUM VITAE**
Ginger S. McRae, Esq., SPHR, SHRM-SCP
Senior Consultant/Shareholder

800-727-2766
**www.epspros.com**
**gmcrae@epspros.com**

---

**EDUCATION**

**J.D.,** *summa cum laude* **University of Georgia School of Law**

> **Activities/Accomplishments:**
> University of Georgia Law Review
> Staff Member, 1980-81 academic year
>
> Order of the Coif

B.A., *summa cum laude* University of Georgia

> MAJOR: Journalism
> MINOR: Political Science

---

**PROFESSIONAL EXPERIENCE**

**Consulting**

> **Employment Practices Solutions, Inc.**
> **Senior Consultant**
> **January 2001 - present**
>
> Utilize expertise in labor and employment law to provide training programs on a broad range of employment issues, including investigation procedures, harassment, sensitivity, diversity, effective hiring, disciplinary action and other workforce policies and practices, and conflict management.  Conduct investigations into complaints of employee workplace misconduct.  Act as an expert witness on employment practices.  Provide guidance to employers

*EEOC v. Waste Pro of Florida, Inc.*
Expert Report of Ginger S. McRae, Esq., SPHR, SHRM-SCP
August 23, 2024                                                                              Page 16

concerning sound personnel practices and procedures.  Make presentations and write articles on employment topics.

**Academic**

**January 2001 - 2006**

Taught various courses on legal issues, including Legal Environment of Business, a graduate level course, and Employment Law, an undergraduate level course for the University of Phoenix.  Created lesson plans for Employment Law course for Business Management and Graduate Business Management degree programs, Labor Relations course for Graduate Business Management degree program, and Business Law course for Graduate Business Management degree program offered by Ashworth College, a nationally accredited distance learning educational institution.  Content for employment and labor law covered anti-discrimination and other federal employment laws, labor law, workers' compensation, employee benefits, and diversity.  Content for business law covered criminal laws, contracts, torts, securities, antitrust, and other areas related to business operations.  Taught Contracts for Emory University Paralegal Program.

**Legal**

**Legility**
**Attorney**
**January 2014 - 2020**

*Provide legal advice and assistance on labor and employment issues for corporate clients, including a consumer credit reporting company and an industrial engineering and services supplier.  Partner with internal counsel and human resources to meet needs and complete projects to maintain compliance with labor and employment laws and manage risk.*

**Southern Company**
**Managing Attorney**
**July 1997 - January 2001**

Provided legal advice and services to Human Resources Department and to management on employment, employee benefits and executive compensation matters; supported internal complaint program; managed outside counsel in litigation matters; presented training to Human Resources personnel and management on a variety of topics.

**Turner Broadcasting System, Inc.**
**Director of Special Projects, Human Resources**
**1996 - 1997**

Consultant to several business units on personnel issues; coordinated company-wide reduction in force due to merger of TBS and Time Warner; managed work/life programs offered to employees.

*EEOC v. Waste Pro of Florida, Inc.*
Expert Report of Ginger S. McRae, Esq., SPHR, SHRM-SCP
August 23, 2024                                                                 Page 17

**Turner Broadcasting System, Inc.**
**Assistant General Counsel**
**1989-1996**

Responsible for labor and employment matters, including handling discrimination and other employment-related claims; managing employment litigation; advising Human Resources department and numerous business divisions; drafting and implementing employment policies; investigating complaints; conducting training on employment issues; negotiation and preparation of employment contracts and separation agreements; advising the company with respect to labor union issues, union avoidance and the conduct of campaigns against union organizational drives; and the labor and employment aspects of the acquisitions of several other companies. Participated in numerous mediations of employment disputes involving racial and sexual harassment and other claims.

**Paul, Hastings - Atlanta, Georgia Office**
**Labor and Employment Law Attorney**
**1983-1989**

Associate in Labor and Employment Department; represented management in all areas of labor and employment litigation, including appellate arguments before federal and state courts of appeals, federal and state equal employment commission proceedings, federal and state court litigation, and National Labor Relations Board representation election and unfair labor practice proceedings.

**United States District Court for the Northern District of Georgia**
**Law Clerk to Honorable Robert H. Hall, United States District Judge.**
**1982-1983**

---

## LICENSE/CERTIFICATIONS

**License:**

Licensed attorney in the State of Georgia, 1982

## Certifications:

Senior Professional in Human Resources (SPHR) since 2005. Awarded from the Human Resource Certification Institute.

Senior Certified Professional (SHRM-SCP) since 2015. Awarded from the Society of Human Resource Management.

---

## MEMBERSHIPS

National Society for Human Resource Management (SHRM)

Atlanta Society for Human Resource Management
   Chair for the 2005 Consultants Professional Emphasis Group
   Leadership Team for the Consultants Professional Emphasis Group, 2002-04

Georgia Bar Association

Atlanta Bar Association, Labor and Employment Section

---

## PUBLICATIONS/PRESENTATIONS

Author, "Parental Leave – Generous to a Fault?," published in Employment Practices Solutions Newsletter, October 2019.

Author, "An Insider's Guide to Employment Practices Experts," published in Employment Practices Solutions Newsletter, May 2016.

Author, "Are Your Employment Practices Expert-Proof?," published in Employment Practices Solutions Newsletter, September 2014 and SHRM Atlanta's eHuman Resource, September 2014.

Quoted in "Missteps by Mike Pouncey, Don Jones hamper Miami Dolphins' effort to repair image," by Adam H. Beasley, Miami Herald, May 13, 2014.

Author, "Rigid Policies May Break Under the Weight of ADA Reasonable Accommodation," Employment Practices Solutions Newsletter, October 2011.

Author, "Insights on Investigations," *Security Management,* December 2008, pp. 132-34.

Author, Assessing Credibility in Workplace Investigations," published in SHRM Atlanta's eHuman Resource, April 2009, and Employment Practices Solutions Newsletter, December 2008.

Author, "Analyzing Past Investigations: An Investment in the Future," published in HR.com's eBulletin, March 20, 2006, and Employment Practices Solutions Newsletter, February 2006.

Author, "Investigations Made 'Easy': Positive Legal Developments and Practical Tips," published in HR.com's eBulletin, March 7, 2005, and Employment Practices Solutions Newsletter, December 2004.

Co-author, "Workplace Strategies in a Down Economy," 2003, Aspen Publishing: New York, NY.

Quoted in "Discrimination's Payoff: 'I Felt Less Than Human,'" published on G. Neil's web site, http://www.gneil.com/hradvisor/hrFocus/archiveArticle.asp?sessionid=cnfss0-316.98&id=16, May 2003.

Co-author, "Ready or Not, It Could Happen to You: The HR Professional on the Witness Stand," Employment Practices Solutions Newsletter, March 2003.

Author, "Health Benefits Claims And Appeals Rules Effective July 1, 2002: Countdown To Compliance," Employment Practices Solutions Newsletter Special Edition, September-October 2002.

Author, "Don't Get Caught at the Shredder: A Guide to Record Keeping Best Practices for Employers,

Employment Practices Solutions Newsletter Special Edition, February 2002; HR.com Ebulletin, February 25, 2002.

Author, "Patients' Bill of Rights: What It Means for Employers and Employees," Employment Practices Solutions Newsletter, July 2001.

Author, "New Benefits Claims and Appeals Rules: Another Item for the 2001 'To Do' List," Employment Practices Solutions Newsletter, January 2001; HR.com Ebulletin, October 1, 2001.

Quoted in "Defamation. Stuck in the Middle: Employers Can Face Lawsuits from Accused as Well as Accusers," By Simon Nadel, March 5, 2001, Bureau of National Affairs.

---

## EXPERT WITNESS DESIGNATIONS

1. <u>Elizabeth Brooks Brown v. Chris Mendoza and Denny's, Inc.,</u> C.A. No. 00-CV-5045, in the United States District Court for the Eastern District of Pennsylvania, on behalf of Plaintiff. Report submitted in September 2001. Reviewed response of company to conduct by manager alleged to be sexually harassing and preventive and corrective actions.

2. <u>Alcatel USA, Inc. v. Cisco Systems, Inc.,</u> C.A. No. 4:00CV199, in the United States District Court for the Eastern District of Texas, on behalf of Plaintiff. Report submitted April 14, 2002 on the issue of an individual's status as an employee versus independent contractor.

3. <u>Jessica Sanders and Polly Sanders v. Timothy Paul Crane, Rollins, Inc., Donald Boswell, and Orkin Exterminating Company,</u> C.A. No. 00-C-2994-1, in the State Court of Gwinnett County, Georgia, on behalf of Plaintiffs. Deposed and testified at trial in July, 2002 on the issues of negligent hiring and retention and company policies and procedures related thereto.

4. <u>Elizabeth Fink v. Chris Mendoza, Advantica Guest Assurance d/b/a Denny's Restaurants, and Denny's, Inc., d/b/a Denny's Restaurants,</u> C.A. No. 02-CV-387, in the United States District Court for the Eastern District of Pennsylvania, on behalf of Plaintiff. Report submitted in August 2002 on adequacy of company actions to prevent sexual harassment and response to conduct by manager.

5. <u>Allan Foster, et al. v. General Electric Company, Local 119 U.E., et al.,</u> C.A. No. 01-CV-6804, in the United States District Court for the Eastern District of Pennsylvania, on behalf of Plaintiffs. Report submitted in August 2002 on adequacy of response to incidents of alleged racial harassment and adequacy of policies and procedures.

6. <u>Bess J. Myers v. Crestone International, L.L.C.,</u> C.A. No. 301-CV1736-D, in the United States District Court for the Northern District of Texas, on behalf of Defendant. Designated in October 2002. Reviewed compensation system for members of management in context of pay discrimination claims.

7. <u>EEOC and Diane Cantu v. InTown Suites Management, Inc</u>., C.A. No. 1:03-CV-1494-RLV, in the United States District Court for the Northern District of Georgia, on behalf of Defendant.  Engaged in 2005 to review actions taken by management against employee for disloyalty in context of employee having alleged racially discriminatory hiring practices.

8. <u>John and Jane Doe v. Brookhaven Country Club, Inc. and Clubcorp USA, Inc.,</u> Cause No. 04-10591-D, in the District Court, Dallas County, Texas, on behalf of Defendants. Engaged in 2005 to review actions taken by management in screening applicants, supervising managers, and conducting an internal investigation in negligent hiring, retention, and supervision case. Deposed by plaintiffs and testified at trial in February 2006.

9. <u>EEOC, Tubandt, et al. v. GLC Restaurants, et al., No. CV05-618,</u> in the United States District Court for the District of Arizona, on behalf of Defendant GLC Restaurants. Engaged in 2006 to review the employer's policy on sexual harassment, training on harassment, and response to complaints.

10. <u>D.S. and R.M. v. The Hertz Corporation and Carco Group, Inc.,</u> No. 9:05cv163, in the United States District Court for the Eastern District of Texas, on behalf of Defendant The Hertz Corporation. Engaged in 2006 to review the employer's policy and practice of screening applicants.

11. <u>Phyllis Darling v. First United Methodist Church of Mineola,</u> et al., No. 2005-067, in the District Court, Wood County, Texas, on behalf of Defendant First United Methodist Church. Engaged in 2006 to review practices of Defendant in screening and supervising staff members.

12. <u>EEOC and Chad Farr v. AutoZone, Inc.,</u> No. CV06-1767, in the United States District Court for the District of Arizona, on behalf of Defendant AutoZone. Engaged in 2007 to review the employer's response to employee's request for reasonable accommodation.

13. <u>EEOC, Rivers, et al., v. FLTVT, LLC d/b/a David Maus Toyota,</u> No. 6:05-cv-1452, in the United States District Court for the Middle District of Florida, on behalf of Defendant FLTVT, LLC. Engaged in 2007 to review the employer's policy on racial discrimination, and the dissemination and communication thereof.

14. <u>EEOC and Jeleana James v. Foot Locker Retail Inc.,</u> No. 2:07-CV-01109-JS, in the United States District Court for the Eastern District of Pennsylvania, on behalf of Defendant Foot Locker Retail Inc. Engaged in 2007 to review the employer's policies on sexual harassment and retaliation, and the dissemination, communication, and application thereof.

15. <u>Cellini D. Parker v. Atlanta Newspapers Name Holding Corporation and Cox Enterprises Inc.,</u> No. 1:02 CV-2652 CC, in the United States District Court for the Northern District of Georgia, on behalf of Defendants. Engaged in 2007 to review the employer's policy on sexual harassment and the application thereof.

16. <u>Carter Bryant v. Mattel, Inc.,</u> No. CV 04-9049 SGL, and consolidated actions, in the United States District Court for the Central District of California, on behalf of Defendant Mattel. Engaged in 2008 to serve as rebuttal expert regarding human resources practices related to intellectual property belonging to the employer.

17. <u>Cynthia Tavani v. CW II Holdings, Inc., Devon Hill Motors, Inc., and Cortright Wetherill, Jr.,</u> in the United States District Court for the Eastern District of Pennsylvania, on behalf of Defendants. Engaged in 2008 to review employer's termination of a human resources director.

18. <u>Jesus Loza, et al. v. Arrow Truck Sales, Inc.</u> in the United States District Court for the Southern District of Texas on behalf of Defendant. Engaged in 2009 to review employer's discrimination and retaliation policies and practices and the application thereof.

19. Regina Guinn and Susan Dobson v. HCA, Inc., GPCH-GP, Inc. d/b/a Garden Park Medical Center, Jay Ratcliffe, and Sarah Ratcliffe in the United States District Court for the Southern District of Mississippi on behalf of Defendant Garden Park Medical Center.  Engaged in 2010 to review employer's harassment and retaliation policies and practices and the application thereof.

20. Estela Carrola v. La Canasta Mexican Food Products, Inc., Josie Ippolito and John Doe Ippolito in the United States District Court for the District of Arizona on behalf of Plaintiff.  Engaged in 2010 on behalf of plaintiff to review employer's policies and practices regarding workplace injury and the application thereof.

21. Patricia Mulligan v. American National Red Cross, Tri-County Chapter, and Sheldon Goldberg in the United States District Court for the District of New Jersey.  Engaged in 2010 on behalf of Defendants American Red Cross and Tri-County Chapter to review employer's harassment and retaliation policies and the application thereof.

22. Gabrielle Blanca Morgan v. Reginald Dicks and MCG Health, Inc. in the Superior Court of Richmond County, Georgia.  Engaged in 2010 on behalf of Defendant MCG Health to review its hiring policies and the application thereof.

23. Richard Trusz v. UBS Realty Investors, LLC and UBS AG in the United States District Court for the District of Connecticut. Engaged in 2011 on behalf of plaintiff to review employer's retaliation policies and the application thereof.

24. Elsa Villegas v. Del Valle Independent School District in the District Court of Travis County, Texas. Engaged in 2011 on behalf of plaintiff to review employer's investigation of alleged misconduct by plaintiff and the corrective action imposed.

25. Doe v. Episcopal School of Dallas in the County Court of Dallas County, Texas.  Engaged in 2011 on behalf of defendant to review practices in the area of hiring and supervision of staff.

26. Doe v. McDonald's Corporation, et al. in the District Court of Wichita County, Texas. Engaged in 2011 on behalf of plaintiff to review practices in the area of hiring staff.

27. James St. Clair v. Don Davis Auto Group in the United States District Court for the Northern District of Texas.  Engaged in 2011 on behalf of plaintiff to review employer's policies and practices regarding disabilities and accommodation thereof.

28. Luz M. Marulanda v. Penske Truck Leasing Co., et al. in the State Court of Cobb County, Georgia. Engaged in 2012 on behalf of plaintiff to review practices in hiring, discipline, and safety.

29. Gwendolyn McDade v. Texas Association of School Boards, Inc. in the 98th Judicial District, Travis County, Texas.  Engaged on behalf of plaintiff to review practices in performance management and other personnel practices.

30. Paul M. Deutsch v. Backus Corporation, et al. in the Superior Court, Judicial District of Hartford, Connecticut.  Engaged on behalf of plaintiff to review employer's practices in connection with internal investigations.

31. <u>Gressett v. Central Arizona Water Conservation District</u> in the United States District Court for the District of Arizona.  Engaged in 2013 on behalf of plaintiff to review employer's policies and practices in connection with employee leave.

32. <u>Welch v. City of Albuquerque, et al</u>. in the United States District Court for the District of New Mexico.  Engaged in 2013 on behalf of plaintiff to review employer's policies and practices in connection with discrimination, harassment and retaliation and the application thereof.

33. <u>Bakhit and Miles v. Safety Marking, Inc., et al</u>. in the United States District Court for the District of Connecticut.  Engaged in 2014 on behalf of plaintiffs to review employer's policies and practices in connection with investigating complaints of harassment and discrimination.

34. <u>Wheeler v. Mitchell College</u>, in the United States District Court for the District of Connecticut. Engaged in 2014 on behalf of plaintiff to review the employer's policies and practices in investigating workplace issues and concerns and responding with appropriate corrective action.

35. <u>Thompson, et al. v. Crantz, et al.</u>, in the Circuit Court of Jackson County, Missouri.  Engaged in 2015 on behalf of Crantz defendants to review association of individuals by distributorship and business relationships among various parties.

36. <u>Bento and Dubiel v. City of Milford, et al</u>, in the United States District Court for the District of Connecticut.  Engaged in 2015 on behalf of plaintiffs to review City's policies and practices regarding responding to complaints and requests for accommodation of disability.

37. <u>Jane Doe and Jean Doe v. Kalahari Resorts & Conventions, et al.</u>, in the Court of Common Pleas, Erie County, Ohio. Engaged in 2016 on behalf of defendants to review the employer's policies and practices for screening, hiring, training, and supervision of lifeguards.

38. <u>Agganis v. T-Mobile USA, Inc.</u>, in the United States District Court for the District of Maine. Engaged in 2016 on behalf of defendant to review the employer's policies and practices regarding harassment and responding to complaints of harassment, and regarding screening and hiring of applicants.

39. <u>Thomas v. City of Stamford, et al.</u>, in the Superior Court of the Judicial District of Stamford/Norwalk, Connecticut.  Engaged in 2016 on behalf of plaintiff to review the employer's policies and practices regarding harassment and responding to complaints of harassment.

40. <u>Benefield v. Big H Amusements</u>, in the Circuit Court of the Sixth Judicial Circuit, Illinois. Engaged in 2016 to review policies and practices regarding screening and hiring of applicants and supervision of workers.

41. <u>Seeley v. Quinnipiac University</u>, in the Superior Court of the Judicial District of New Haven, Connecticut.  Engaged in 2017 on behalf of plaintiff to review the employer's policies and practices regarding workplace standards of behavior and responding to complaints about employees.

42. <u>Castillo, et al. v. Waukesha-Pearce Industries, Inc. et al.</u>, in the District Court of Harris County, Texas.  Engaged in 2017 on behalf of defendants to review policies and practices with respect to operation of employer-provided vehicles by its employees and the application of those policies and practices.

43. <u>In re: AM,</u> in the District Court of Harris County, Texas.  Engaged in 2017 on behalf of defendants to review the employer's policies and practices regarding harassment and responding to complaints of harassment.

44. <u>TJ and GJ, on behalf of minor child, CJ v. Morgan Frawley and the Congregational Church of New Canaan,</u> in the United States District Court for the District of Connecticut.  Engaged in 2017 on behalf of defendant to review the employer's policies and practices with respect to hiring, training, and supervision of employees and the application of those policies and practices.

45. <u>Zeringue v. Monster Energy Co.</u>, JAMS Mediation and Arbitration Service. Engaged in 2019 on behalf of defendant to review the employer's policies and practices with respect to sexual harassment.

46. <u>Pierce, et al. v. Enterprise Rental Car, et al.</u>, in the Circuit Court of Dale County, Alabama. Engaged in 2019 on behalf of defendant to review the employer's policies and practices with respect to hiring and employee medical conditions.

47. <u>Oglietti v. CVS Health Corporation, et al.</u>, in the United States District Court for the Western District of North Carolina.  Engaged in 2020 on behalf of plaintiff to review the employer's policies and practices with regard to investigations of complaints and the response thereto.

48. <u>Fiveash v. Connecticut Conference of Municipalities et al.</u>, in the Superior Court of Connecticut, District of Hartford. Engaged in 2020 on behalf of plaintiff to review the employer's policies and practices with regard to investigations of complaints and the response thereto.

49. <u>Rad v. IAC/Interactive Corp., et al.</u>, in the Supreme Court of New York, County of New York. Engaged in 2021 on behalf of Defendants to review the employer's policies and practices with regard to investigations of complaints and the response thereto.

50. <u>Labbe v. Jim Moran & Associates, Inc.</u>, in the Circuit Court of the 7th Judicial Circuit of St. Johns County, Florida. Engaged in 2021 on behalf of plaintiff to review the employer's policies and practices with regard to investigations of complaints and the response thereto.

51. <u>Doe v. Prime Healthcare Services – Lehigh Acres, LLC et al.</u>, in the Circuit Court of the 2nd Judicial Circuit of Lee County, Florida.  Engaged in 2021 on behalf of defendant to review the employer's policies and practices with regard to hiring.

52. <u>Shampine v. US Foods, Inc.</u>, in the United States District Court for the Eastern District of Tennessee. Engaged in 2021 on behalf of defendant to review the employer's policies and practices with regard to investigations of complaints and the response thereto.

53. <u>Marquez v. Cazares and Dollar Tree Stores, Inc.</u>, in the District Court of Harris County, Texas. Engaged in 2022 on behalf of defendant Dollar Tree to review the employer's policies and practices with regard to hiring.

54. <u>Brummer and Sherrill v. Hill, Hite, and Aeroflow, Inc.,</u> in the General Court of Justice, Superior Division, North Carolina. Engaged in 2022 to review the employer Aeroflow's policies and practices with regarding preventing and responding to sexual harassment and other workplace misconduct.

55. <u>Glick v. City of Tullahoma, Tennessee,</u> in the United States District Court for the Eastern District of Tennessee.  Engaged in 2023 to review the employer's policies and practices with regard to responding to complaints in the workplace.

56. <u>Riddle v. Butterfield and Eger</u>, in the United States District Court for the Middle District of Florida. Engaged in 2023 to review the employer's policies and practices with regard to preventing and responding to sexual harassment and other workplace misconduct.

57. <u>Luter, et al. v. Terrasmart, et al.</u>, in the United States District Court for the District of Connecticut. Engaged in 2022 to review the employer's policies with regarding to preventing and responding to sexual harassment and workplace violence.

58. <u>Edwards, et al. v. Avis Budget Car Rental, LLC, et al.</u>, in the Count Court of Dallas County, Texas. Engaged in 2023 to review the employer's policies with regard to hiring, termination, and other workplace policies and practices.

---

## PRESENTATIONS

Workplace Bullying and Creating a Respectful Work Environment. Presentation for healthcare professionals, August 10, 2018.

Senior Leadership Coaching. Webinar for leaders in a client's organization, July 24, 2018.

Conducting Solid Internal Investigations. Webcast by the Pro Bono Partnership of Atlanta, August 23, 2017.

Facebook Firing? The Problems Associated with Employers Policing Employee Blogs and Social Networking Sites. Teleconference by American Bar Association Section of Litigation, May 2009. Panel member.

Facebook Firing? Employment Issues Associated with Policing of Employee Blogs and Social Networking Sites. Workshop at 2009 American Bar Association Section of Litigation Annual Conference, April 2009. Panel member.

Employer or Big Brother:  The Quandary over Employee Blogging and Social Networking.  Webinar for Employment Practices Solutions, September 9, 2008.

Employer or Big Brother: Responding to Employee Blogging, IM'ing and Off-duty Conduct, Presentation at Society for Human Resources Management Atlanta Spring Assembly, March 18, 2008.

Presentation on Workplace Investigations, American Institute for Continuing Legal Education National Employment Law Conference, December 3-4, 2007, Las Vegas, Nevada.

How Executives and Managers Can Avoid Personal Lawsuits for Work Decisions.  Audio Conference for Business 21 Publishing, July 30, 2007.

Employer or Big Brother:  Responding to Employee Blogging, IM'ing, and Off-Duty Conduct that Affects Employers.  Presentation at HR Star Conference, Atlanta, Georgia, May 2, 2007.

Avoiding Personal Lawsuits for Work Decisions.  Audio Conference for National Institute of Business Management, April 19, 2007, and September 26, 2006.

What a Long, Strange Road:  Tackling Advance Internal Investigations.  Presentation at Society for Human Resources Management Atlanta Spring Assembly, March 20, 2007.

Workplace Investigations Made Easy:  Practical Tips for 2007, Audio Conference for National Institute of Business Management, January 16, 2007.

Ann E. Employee v. YOU:  Personal Liability and the HR Professional.  Presentation at HR Star Conference, Atlanta, Georgia, May 10, 2006.

Ann E. Employee v. YOU: Personal Liability and the HR Professional. Presentation at Society for Human Resource Management Atlanta Spring Assembly, March 21, 2006.

Workplace Investigations Made "Easy": Positive Legal Developments and Practical Tips for 2005. Presentation for Northeast Atlanta Group of SHRM Atlanta, September 15, 2005.

Workplace Investigations. Audio Conference for Alexander Hamilton Publications, May 24, 2005.

Workplace Investigations Made "Easy": Positive Legal Developments and Practical Tips for 2005. Presentation at HR Star Conference, Atlanta, Georgia, May 18, 2005.

Think Before You Shrink. Downsizing: Implications for Employers, Administrators, and Employees. Presentation to Employer Issues Conference sponsored by Franklin County, Ohio Mental Health Association, April 21, 2005.

HR and Business Communications: Key Legal Issues and Best Practices. Athens Area Society of Human Resources Professionals, November 9, 2004.

Practical Techniques for Conducting a Sound Investigation. Council of State Personnel Administration 2004 Fall Conference, October 28, 2004.

Managing (Mis)behavior in Executives, Key Employees, and Board Members, Southeast Human Resource Conference, Atlanta, Georgia, October 19, 2004.

Conducting Effective and Legal Workplace Investigations. Rome, Georgia Society of Human Resources Professionals, October 12, 2004.

Critical Components of a Sound Workplace Investigation. HR Star Conference, Atlanta, Georgia, May 12, 2004.

Managing Employee Issues. Georgia Women Entrepreneurs 2004 Conference, presented with Donna Lowe, April 21, 2004.

Call Your Next Witness: The HR Professional on the Witness Stand,Valdosta, Georgia Society of Human Resources Professionals, March 17, 2004.

HR Consulting to Fit the Tightest Budget: Sidestepping Legal Minefields, 13th Annual Southeast Human Resources Conference, Atlanta, Georgia, October 21, 2003. Panel member.

Conducting Workplace Investigations. Audio conference for Alexander Hamilton Publications, June 18, 2003.

Call Your Next Witness: The HR Professional on the Witness Stand. HR Star Conference, Atlanta, Georgia, April 30, 2003.

Conducting Effective and Legal Workplace Investigations, Athens Area Society of Human Resources Professionals, January 14, 2003.

Conducting Effective and Legal Workplace Investigations, Greater Henry County Society of Human Resources Professionals, September 19, 2002.

Conducting Effective and Legal Workplace Investigations. West Georgia Society of Human Resource Professionals, May 9, 2002.

Conducting Workplace Investigations.  Interactive seminar.  Atlanta, GA, April 30, 2002.

Trends in Employee Training, Foothills of Georgia Society of Human Resources Professionals, April 18, 2002.

Strategies for Effective Employee Record Keeping in Georgia. Speaker at Seminar by Lorman Educational Services, December 14, 2001.

Employment Law, American Bar Association EEO Basics Program, Atlanta, GA, November 15, 2001.

Conducting Bulletproof Investigations, Central Georgia Society of Human Resource Professionals. September 6, 2001.

Best Practices in Employment: Preventing Workplace Discrimination and Harassment and Managing Employee Complaints and Workplace Conflicts, Seminars in Atlanta, GA and Chattanooga, TN, September 2001.